## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF WISCONSIN, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-cv-546 |
| WISCONSIN PUBLIC SERVICE CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) | |

## REMEDIAL ACTION CONSENT DECREE FOR THE
## WISCONSIN PUBLIC SERVICE CORPORATION
## STEVENS POINT MANUFACTURED GAS PLANT
## SUPERFUND ALTERNATIVE SITE

TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 2 |
| III. | PARTIES BOUND | 2 |
| IV. | DEFINITIONS | 3 |
| V. | GENERAL PROVISIONS | 7 |
| VI. | PERFORMANCE OF THE WORK BY SETTLING DEFENDANT | 9 |
| VII. | REMEDY REVIEW | 13 |
| VIII. | QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS | 14 |
| IX. | ACCESS AND INSTITUTIONAL CONTROLS | 15 |
| X. | REPORTING REQUIREMENTS | 20 |
| XI. | EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES | 21 |
| XII. | PROJECT COORDINATORS | 22 |
| XIII. | PERFORMANCE GUARANTEE | 23 |
| XIV. | CERTIFICATION OF COMPLETION | 27 |
| XV. | EMERGENCY RESPONSE | 29 |
| XVI. | PAYMENTS FOR RESPONSE COSTS | 30 |
| XVII. | INDEMNIFICATION AND INSURANCE | 33 |
| XVIII. | FORCE MAJEURE | 34 |
| XIX. | DISPUTE RESOLUTION | 35 |
| XX. | STIPULATED PENALTIES | 38 |
| XXI. | COVENANTS BY PLAINTIFFS | 40 |
| XXII. | COVENANTS BY SETTLING DEFENDANT | 43 |
| XXIII. | EFFECT OF SETTLEMENT; CONTRIBUTION | 45 |
| XXIV. | ACCESS TO INFORMATION | 46 |
| XXV. | RETENTION OF RECORDS | 47 |
| XXVI. | NOTICES AND SUBMISSIONS | 48 |
| XXVII. | RETENTION OF JURISDICTION | 49 |
| XXVIII. | APPENDICES | 49 |
| XXIX. | COMMUNITY INVOLVEMENT | 49 |
| XXX. | MODIFICATION | 50 |
| XXXI. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 50 |
| XXXII. | SIGNATORIES/SERVICE | 51 |
| XXXIII. | FINAL JUDGMENT | 51 |

# I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Wisconsin (the "State") filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The Plaintiffs in their complaint seek, *inter alia*: (1) reimbursement of costs incurred by EPA, the Department of Justice ("DOJ"), and the State for response actions at the WPSC Stevens Point MGP Superfund Alternative Site in Stevens Point, Wisconsin, together with accrued interest; and (2) performance of response actions by the Defendant at the Site consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300.

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Wisconsin of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for the Site. The State has participated in such negotiations and is a party to this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the National Oceanic and Atmospheric Administration ("NOAA") on February 9, 2006,of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustee to participate in the negotiation of this Consent Decree.

E.      Defendant Wisconsin Public Service Corporation ("WPSC" or "Settling Defendant") does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of a hazardous substance at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

F.      In response to a release or a substantial threat of a release of a hazardous substance at or from the Site, Settling Defendant commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

G.      Settling Defendant completed a Remedial Investigation ("RI") Report on April 17, 2012. Settling Defendant completed a Feasibility Study ("FS") Report on April 17, 2012.

H.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on July 2, 2012, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.

I.      The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 25, 2012, on which the State has given its concurrence. The ROD includes EPA's explanation for any significant differences between the final plan and the proposed plan as well as a responsiveness summary to

the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

J.      On May 6, 2013, Settling Defendant signed an Administrative Order on Consent for Remedial Design ("AOC"), Docket No. V-W-13-c-012, in which it agreed to perform the design necessary to implement the remedy. EPA signed the AOC on May 14, 2013 and the AOC became effective on May 24, 2013.

K.      Based on the information presently available to EPA and the State, EPA and the State believe that the Work will be properly and promptly conducted by Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its appendices.

L.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the Work to be performed by Settling Defendant shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

M.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and the State and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate status of Settling Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing Settling Defendant with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent

Decree. Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply solely for purposes of this Consent Decree:

"AOC" shall mean the Administrative Order on Consent for Remedial Design between EPA and WPSC captioned In the Matter of WPSC Stevens Point MGP Site, Docket No. V-W-13-C-012. The AOC is attached hereto as Appendix A.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXVIII). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal or state holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which this Consent Decree is entered by the Court as recorded on the Court docket or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

3

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Paragraph 9 (Notice to Successors-in-Title and Transfers of Real Property), Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation), and XV (Emergency Response), Paragraph 48 (Funding for Work Takeover), and Section XXIX (Community Involvement). Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Defendant has agreed to pay under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from February 1, 2014 to the Effective Date.

"Institutional Controls" or "ICs" shall mean restrictions, limitations, or other conditions or action taken under state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices, including, but not limited to, WIS. STAT. § 292.12, that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; (c) provide information intended to modify or guide human behavior at or in connection with the Site; and/or (d) require easements or covenants running with the land that (i) limit land, water, or resource use and/or provide access rights and (ii) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office (which has commonly been referred to as "Proprietary Controls" by EPA).

"Institutional Control Implementation and Assurance Plan" or "ICIAP" shall mean the plan for implementing, maintaining, monitoring, and reporting on the Institutional Controls set forth in the ROD, prepared in accordance with the Statement of Work ("SOW").

"Interim Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, (a) paid by the United States in connection with the Site between February 1, 2014 and the Effective Date or (b) incurred prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O&M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan

4

approved or developed by EPA pursuant to Section VI (Performance of the Work by Settling Defendant) and the SOW, and maintenance, monitoring, and enforcement of Institutional Controls as provided in the ICIAP.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States, the State of Wisconsin, and Settling Defendant.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through January 31, 2014, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the ROD and the SOW and any modified standards established pursuant to this Consent Decree.

"Plaintiffs" shall mean the United States and the State of Wisconsin.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on September 25, 2012, by the Director, Superfund Division, EPA Region 5 and all attachments thereto. The ROD is attached as Appendix B to this Consent Decree.

"Remedial Action" shall mean all activities Settling Defendant is required to perform under the Consent Decree to implement the ROD, in accordance with the SOW, the final approved remedial design submission, the approved Remedial Action Work Plan, and other plans approved by EPA, including implementation of Institutional Controls, until the Performance Standards are met, and excluding performance of the Remedial Design, O&M, and the activities required under Section XXV (Retention of Records).

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 12 (Remedial Action) and approved by EPA, after consultation with WDNR, and any modifications thereto. WDNR may join EPA in approving the Remedial Action Work Plan.

"Remedial Design" shall mean those activities to be undertaken by Settling Defendant to develop the final plans and specifications for the Remedial Action pursuant to the May 24, 2013 AOC and the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to the May 24, 2013 AOC and approved by EPA, and any modifications thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" or "WPSC" shall mean Wisconsin Public Service Corporation.

"Site" shall mean the WPSC Stevens Point MGP Superfund Alternative Site, encompassing approximately three acres, located at Stevens Point, Portage County, Wisconsin, and depicted generally on the map attached as Appendix C.

"State" shall mean the State of Wisconsin.

"State Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the State incurs in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Paragraph 9 (Notice to Successors-in-Title and Transfers of Real Property), Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation), and XV (Emergency Response), Paragraph 48 (Funding for Work Takeover), and Section XXIX (Community Involvement).  State Future Response Costs shall also include all State Interim Response Costs.

"State Interim Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, (a) paid by the State in connection with the Site between February 1, 2014 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Action and O&M at the Site, as set forth in Appendix D to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA, and any federal natural resource trustee. "Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous substance" under Wis. Stat. § 292.01.

"WDNR" shall mean the Wisconsin Department of Natural Resources and any successor departments or agencies of the State.

6

"WDNR Database" shall mean the publically accessible database available on the internet as required by WIS. STAT. §§ 292.12, 292.31, and 292.57. The WDNR Database is accessible at http://dnr.wi.gov/org/aw/rr/brrts/index.htm

"Work" shall mean all activities and obligations Settling Defendant is required to perform under this Consent Decree, except the activities required under Section XXV (Retention of Records).

"WPSC Stevens Point Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

## V. GENERAL PROVISIONS

5.      Objectives of the Parties. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the design and implementation of response actions at the Site by Settling Defendant, to pay response costs of the Plaintiffs, and to resolve the claims of Plaintiffs against Settling Defendant as provided in this Consent Decree.

6.      Commitments by Settling Defendant.

a.      Settling Defendant shall finance and perform the Work in accordance with the AOC, this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree, the AOC, or developed by Settling Defendant and approved by EPA pursuant to this Consent Decree or the AOC. Upon entry of this Consent Decree, the work plan and all other plans, standards, specifications, and schedules set forth in or developed and approved by EPA pursuant to the AOC shall be incorporated into and become enforceable under this Consent Decree. Settling Defendant shall pay the United States and the State for Past Response Costs and Future Response Costs as provided in this Consent Decree.

b.      Settling Defendant shall comply with the AOC and shall perform all work required under the AOC in accordance with the terms of the AOC, until such time as the AOC is superseded by this Decree pursuant to this Paragraph. EPA shall make a determination as to Settling Defendant's compliance with the AOC concurrently with the lodging of the Consent Decree in this matter by the United States and shall notify Settling Defendant of that determination. If EPA determines that Settling Defendant is in full compliance with the terms and obligations of the AOC as of the date of entry of this Consent Decree, this Consent Decree shall supersede the AOC upon entry of the Consent Decree with respect to all subsequent obligations. If EPA determines that Settling Defendant is not in full compliance with the terms and obligations of the AOC as of the date of entry of this Consent Decree, EPA shall notify Settling Defendant of what is needed to come into compliance, and both the AOC and this Consent Decree shall be in full force and effect until EPA subsequently determines that Settling Defendant has achieved full current compliance with the terms and conditions of the AOC, at which time this Consent Decree shall supersede the AOC. If this Consent Decree is not entered by the Court, the AOC shall not be superseded and this Consent Decree shall have no effect on

the AOC. Any documents that are required to be submitted under this Consent Decree that have been submitted by Settling Defendant pursuant to the AOC need not be resubmitted after the date that this Consent Decree supersedes the AOC, unless EPA determines that such submittal is inadequate. Nothing in this Consent Decree shall be deemed to bar the United States from enforcing the AOC for Settling Defendant's failure to comply with the AOC as of the date of entry of this Consent Decree. With respect to violations of the AOC occurring prior to the date that the AOC is superseded by this Consent Decree, EPA, at any time (including after the date that the AOC has been superseded by this Consent Decree), may seek penalties or punitive damages pursuant to Sections 106(b) and 107(c)(3) of CERCLA, 42 U.S.C. §§ 9606(b) and 9607(c)(3), notwithstanding any correction of such violations.

7.     Compliance With Applicable Law. All activities undertaken by Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

8.     Permits.

a.     As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.     Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a and required for the Work, provided that it has submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.     Notice to Successors-in-Title and Transfers of Real Property.

a.     For any real property owned or controlled by Settling Defendant located at the Site, Settling Defendant shall, within 15 days after the Effective Date, submit to EPA for review and approval, after consultation with WDNR, a proposed notice to be filed with the appropriate land records office that provides a description of the real property and provides notice to all successors-in-title that the real property is part of the Site, that EPA has selected a remedy for the Site, and that Settling Defendant has entered into a Consent Decree requiring implementation of the remedy. The notice also shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date

8

the Consent Decree was entered by the Court. The notice shall also state that information relating to Institutional Controls impacting the property is maintained on the WDNR Database and include the internet address for the WDNR Database. Settling Defendant shall record the notice within ten working days after receiving approval of the notice from EPA and WDNR. Settling Defendant shall provide EPA and WDNR with a certified copy of the recorded notice within ten working days after recording such notice.

       b.     Settling Defendant shall, at least 60 days prior to any Transfer of any real property located at the Site, give written notice: (1) to the transferee regarding the Consent Decree and any Institutional Controls regarding the real property; and (2) to EPA and the State regarding the proposed Transfer, including the name and address of the transferee and the date on which the transferee was notified of the Consent Decree and any Institutional Controls.

       c.     Settling Defendant may Transfer any real property located at the Site only if: (1) any Institutional Controls required by Paragraph 26.c have been placed in the WDNR Database and recorded, if required, with respect to the real property; or (2) Settling Defendant has obtained an agreement from the transferee, enforceable by Settling Defendant, the United States, and the State to (i) allow access and restrict land/water use, pursuant to Paragraphs 27.a(1) and 27.a(2), (ii) record and place in the WDNR Database any Institutional Controls on the real property, pursuant to Paragraph 27.a(3), and (iii) subordinate its rights to any such Institutional Controls, pursuant to Paragraph 27.a(3), and EPA has approved the agreement in writing, after consultation with WDNR. If, after a Transfer of the real property, the transferee fails to comply with the agreement provided for in this Paragraph 9.c, Settling Defendant shall take all reasonable steps to obtain the transferee's compliance with such agreement. The United States and the State may seek the transferee's compliance with the agreement and/or assist Settling Defendant in obtaining compliance with the agreement. Settling Defendant shall reimburse the United States under Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States regarding obtaining compliance with such agreement, including, but not limited to, the cost of attorney time.

       d.     In the event of any Transfer of real property located at the Site, unless the United States otherwise consents in writing, Settling Defendant shall continue to comply with its obligations under the Consent Decree, including, but not limited to, its obligation to provide and/or secure access, to implement, maintain, monitor, and report on Institutional Controls, and to abide by such Institutional Controls.

## VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

  10.    <u>Selection of Supervising Contractor</u>.

       a.     All aspects of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work by Settling Defendant), VIII (Quality Assurance, Sampling, and Data Analysis), IX (Access and Institutional Controls), and XV (Emergency Response) shall be under the direction and supervision of the Supervising Contractor. Settling Defendant has selected and, after reasonable opportunity for review and comment by the State, EPA has issued an authorization to proceed regarding hiring of the following person as Supervising Contractor: Natural Resource Technology, Inc. If at any time hereafter, Settling

9

Defendant proposes to change this Supervising Contractor, Settling Defendant shall give such notice to EPA and the State and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the State, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree. Settling Defendant shall demonstrate that the proposed replacement contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP"). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.

   b.    If EPA disapproves a proposed replacement Supervising Contractor, EPA will notify Settling Defendant in writing. Settling Defendant shall submit to EPA and the State a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days after receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendant may select any contractor from that list that is not disapproved and shall notify EPA and the State of the name of the contractor selected within 21 days after EPA's authorization to proceed.

   c.    If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Defendant from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, Settling Defendant may seek relief under Section XVIII (Force Majeure).

11.   Remedial Design.

   a.    The Remedial Design Work Plan has been approved by EPA after consultation with WDNR. The Remedial Design Work Plan shall be incorporated into and enforceable under this Consent Decree. Within 30 days of the Effective Date, Settling Defendant shall submit to EPA and the State a Health and Safety Plan for field design activities that conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

   b.    Settling Defendant shall implement the Remedial Design Work Plan. Settling Defendant shall submit to EPA and the State all plans, reports, and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Unless otherwise directed by EPA, Settling Defendant shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan.

   c.    The preliminary design submission shall include, at a minimum, the following: (1) design criteria; (2) results of treatability studies; (3) results of additional field sampling and pre-design work; (4) project delivery strategy; (5) preliminary plans, drawings, and sketches; (6) required specifications in outline form; and (7) preliminary construction schedule.

10

d.      The intermediate design submission, if required by EPA or if independently submitted by Settling Defendant, shall be a continuation and expansion of the preliminary design.

e.      The pre-final/final design submission shall include, at a minimum, the following: (1) final plans and specifications; (2) Operation and Maintenance Plan; (3) CQAP; (4) Field Sampling Plan (directed at measuring progress towards meeting Performance Standards); and (5) Contingency Plan. The CQAP, which shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official, independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project.

12.    Remedial Action.

a.      Within 30 days after the approval of the final design submission, Settling Defendant shall submit to EPA and the State a work plan for the performance of the Remedial Action at the Site ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and enforceable under this Consent Decree. At the same time as it submits the Remedial Action Work Plan, Settling Defendant shall submit to EPA and the State a Health and Safety Plan for field activities required by the Remedial Action Work Plan that conforms to the applicable Occupational Safety and Health Administration and EPA requirements, including, but not limited to, 29 C.F.R. § 1910.120.

b.      The Remedial Action Work Plan shall include the following: (1) schedule for completion of the Remedial Action; (2) method for selection of the contractor; (3) schedule for developing and submitting other required Remedial Action plans; (4) groundwater monitoring plan; (5) methods for satisfying permitting requirements; (6) methodology for implementing the Operation and Maintenance Plan; (7) methodology for implementing the Contingency Plan; (8) tentative formulation of the Remedial Action team; (9) Construction Quality Assurance Plan ("CQAP") (by construction contractor); and (10) procedures and plans for the decontamination of equipment and the disposal of contaminated materials. The Remedial Action Work Plan also shall include the methodology for implementing the CQAP and a schedule for implementing all Remedial Action tasks identified in the final design submission and shall identify the initial formulation of Settling Defendant' Remedial Action project team (including, but not limited to, the Supervising Contractor).

c.      Upon approval of the Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by the State, Settling Defendant shall implement the activities required under the Remedial Action Work Plan. Settling Defendant shall submit to EPA and the State all reports and other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Unless otherwise

11

directed by EPA, Settling Defendant shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

13.     Settling Defendant shall continue to implement the Remedial Action until the Performance Standards are achieved. Settling Defendant shall implement O&M for so long thereafter as is required by this Consent Decree.

14.     <u>Modification of SOW or Related Work Plans</u>.

a.     If EPA determines that it is necessary to modify the work specified in the SOW and/or in work plans developed pursuant to the SOW to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, and such modification is consistent with the scope of the remedy set forth in the ROD, then EPA may issue such modification in writing and shall notify Settling Defendant of such modification. For the purposes of this Paragraph and Paragraphs 50 (Completion of the Remedial Action) and 51 (Completion of the Work) only, the "scope of the remedy set forth in the ROD" is: (i) ICs on 5.4 acres and maintenance of existing clean sand cover and cap; (ii) monitored natural attenuation ("MNA") of groundwater; (iii) dredging and off-site disposal of approximately 2,080 tons of Wisconsin River sediments and a sand cover over the dredged surface; and (iv) 6-inch sand cap with activated carbon over Pfiffner Park sediments. If Settling Defendant objects to the modification it may, within 30 days after EPA's notification, seek dispute resolution under Paragraph 69 (Record Review).

b.     The SOW and/or related work plans shall be modified (1) in accordance with the modification issued by EPA; or (2) if Settling Defendant invokes dispute resolution, in accordance with the final resolution of the dispute. The modification shall be incorporated into and enforceable under this Consent Decree, and Settling Defendant shall implement all work required by such modification. Settling Defendant shall incorporate the modification into the Remedial Design or Remedial Action Work Plan under Paragraph 11 (Remedial Design) or Paragraph 12 (Remedial Action), as appropriate.

c.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

15.     Nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

16.     <u>Off-Site Shipment of Waste Material</u>.

a.     Settling Defendant may ship Waste Material from the Site to an off-site facility only if it verifies, prior to any shipment, that the off-site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C. § 9621(d)(3) and 40 C.F.R. § 300.440.

12

b.      Settling Defendant may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, it provides written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator. This notice requirement shall not apply to any off-site shipments when the total quantity of all such shipments will not exceed ten cubic yards. The written notice shall include the following information, if available: (1) the name and location of the receiving facility; (2) the type and quantity of Waste Material to be shipped; (3) the schedule for the shipment; and (4) the method of transportation. Settling Defendant also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility. Settling Defendant shall provide the written notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

## VII. REMEDY REVIEW

17.     Periodic Review. Settling Defendant shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations.

18.     EPA Selection of Further Response Actions. If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

19.     Opportunity to Comment. Settling Defendant and, if required by Section 113(k)(2) or Section 117 of CERCLA, 42 U.S.C. § 9613(k)(2) or § 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

20.     Settling Defendant's Obligation to Perform Further Response Actions. If EPA selects further response actions relating to the Site, EPA may require Settling Defendant to perform such further response actions, but only to the extent that the reopener conditions in Paragraph 86 or Paragraph 87 (United States' Pre- and Post-Certification Reservations) are satisfied. Settling Defendant may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (a) EPA's determination that the reopener conditions of Paragraph 86 or Paragraph 87 are satisfied, (b) EPA's determination that the Remedial Action is not protective of human health and the environment, or (c) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 69 (Record Review).

21.     Submission of Plans. If Settling Defendant is required to perform further response actions pursuant to Paragraph 20, it shall submit a plan for such response action to EPA for approval in accordance with the procedures of Section VI (Performance of the Work by Settling Defendant). Settling Defendant shall implement the approved plan in accordance with this Consent Decree.

13

## VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

22.    <u>Quality Assurance.</u>

a.    Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance, and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001, reissued May 2006), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendant of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.

b.    For any monitoring project under this Consent Decree, Settling Defendant shall comply with the previously approved Multi-Site Quality Assurance Project Plan for Former Manufactured Gas Plant Sites, dated September 4, 2007, amended as appropriate (the "Multi-Site QAPP").  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the Multi-Site QAPP and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  Settling Defendant shall ensure that EPA and State personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree.  In addition, Settling Defendant shall ensure that such laboratories analyze all samples submitted by EPA pursuant to the Multi-Site QAPP for quality assurance monitoring.  Settling Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods that are documented in the "USEPA Contract Laboratory Program Statement of Work for Inorganic Analysis, ILM05.4," and the "USEPA Contract Laboratory Program Statement of Work for Organic Analysis, SOM01.2," and any amendments made thereto during the course of the implementation of this Consent Decree; however, upon approval by EPA, after opportunity for review and comment by the State, Settling Defendant may use other analytical methods that are as stringent as or more stringent than the CLP-approved methods.  Settling Defendant shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent quality assurance/quality control ("QA/QC") program.  Settling Defendant shall use only laboratories that have a documented Quality System that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.  EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements.  Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree are conducted in accordance with the procedures set forth in the Multi-Site QAPP.

23.    Upon request, Settling Defendant shall allow split or duplicate samples to be taken by EPA and the State or their authorized representatives.  Settling Defendant shall notify EPA and the State not less than 28 days in advance of any sample collection activity unless shorter

14

notice is agreed to by EPA and the State. In addition, EPA and the State shall have the right to take any additional samples they deem necessary. Upon request, EPA and the State shall allow Settling Defendant to take split or duplicate samples of any samples it takes as part of Plaintiffs' oversight of Settling Defendant's implementation of the Work.

24.     Settling Defendant shall submit to EPA and the State two copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendant with respect to the Site and/or the implementation of this Consent Decree unless EPA and the State agree otherwise.

25.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable federal or state statutes or regulations.

IX.  ACCESS AND INSTITUTIONAL CONTROLS

26.     If the Site, or any other real property where access or land/water use restrictions are needed, is owned or controlled by Settling Defendant:

a.     Settling Defendant shall, commencing on the date of lodging of the Consent Decree, provide the United States, the State, and their representatives, contractors, and subcontractors, with access at all reasonable times to the Site, or such other real property, to conduct any activity regarding the Consent Decree including, but not limited to, the following activities:

(1)     monitoring the Work;

(2)     verifying any data or information submitted to the United States or the State;

(3)     conducting investigations regarding contamination at or near the Site;

(4)     obtaining samples;

(5)     assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     assessing implementation of quality assurance and quality control practices as defined in the approved CQAP;

(7)     implementing the Work pursuant to the conditions set forth in Paragraph 90 (Work Takeover);

15

(8)     inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XXIV (Access to Information);

(9)     assessing Settling Defendant's compliance with the Consent Decree;

(10)     determining whether the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(11)     implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls and the requirements of the ICIAP.

b.     Commencing on the date of lodging of the Consent Decree, Settling Defendant shall not use the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action or O&M.  The restrictions shall include, but not be limited to:

(1)     no entry, excavation or other disturbance, without an approved soil management plan, of the surface soils and the parking lot in the area of the Site depicted in Figure 3 of the ROD; and

(2)     no use or consumption of contaminated groundwater in the area of the Site depicted in Figure 4 of the ROD.  Well construction requires approval by WDNR Bureau of Drinking and Groundwater.

c.     Settling Defendant shall:

(1)     Grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 26.a; and grant the right to enforce the land/water use restrictions set forth in Paragraph 26.b, including, but not limited to, the specific restrictions listed therein and any land/water use restrictions listed in the ICIAP, as further specified in this Paragraph 26.c.  Access and the right to enforce restrictions, conditions, or limitations shall be granted to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives; (ii) the State and its representatives; and/or (iii) other appropriate grantees.  Access and the right to enforce restrictions, conditions, or limitations other than those granted to the United States, shall include a designation that EPA and/or WDNR as appropriate, is a third-party beneficiary, allowing EPA and /or WDNR to maintain the right to enforce the access and the right to enforce restrictions, conditions, or limitations without acquiring an interest in real property.

16

(2)    In accordance with the schedule set forth in the ICIAP, submit to EPA for review and approval, after consultation with WDNR, regarding such real property: (i) draft Institutional Controls that are enforceable under state or local law; (ii) the information required for the WDNR Database under WIS. STAT. § 292.12(3); and (iii) a current title insurance commitment or other evidence of title acceptable to EPA, that shows title to the land affected by the Institutional Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

(3)    Within 15 days after EPA's approval and acceptance of the Institutional Controls and the title evidence, update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, Settling Defendant shall provide EPA and WDNR with a final title insurance policy, or other final evidence of title acceptable to EPA.  If the Institutional Controls are to be conveyed to the United States, the Institutional Controls and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title shall be obtained as required by 40 U.S.C. § 3111.

(4)    Should EPA and WDNR determine that the Institutional Controls require modification, Settling Defendant shall draft and finalize revised Institutional Controls as requested by EPA and WDNR.  Upon request by EPA or WDNR, Settling Defendant shall execute and record easements or covenants running with the land that (a) limit land, water, or resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

d.    Within 15 days of the approval and acceptance of the Remedial Action Work Plan and issuance of an approval letter to Settling Defendant incorporating Institutional Controls, WDNR shall place the Institutional Controls in the WDNR Database.

e.    As part of certifying the Completion of Work under Paragraph 51.b, EPA and WDNR may update or impose new restrictions, limitations, or other conditions on the property, and WDNR shall place the required Institutional Controls in the WDNR Database.

27.    If the Site, or any other real property where access and/or land/water use restrictions are needed, is owned or controlled by persons other than Settling Defendant:

a.    Settling Defendant shall use best efforts to secure from such persons an agreement to provide access thereto for the United States, the State, and Settling Defendant, and their representatives, contractors, and subcontractors, to conduct any activity regarding the Consent Decree including, but not limited to, the activities listed in Paragraph 26.a;

17

      b.     If EPA determines that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are insufficient to impose necessary land/water use restrictions over such property, Settling Defendant shall use best efforts to secure from such persons:

      (1)     an agreement, enforceable by Settling Defendant and the United States, to refrain from using the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action. The agreement shall include, but not be limited to, the land/water use restrictions listed in Paragraph 26.b; and

      (2)     the execution of Institutional Controls that can be included in the WDNR Database, that (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 26.a, and (ii) grant the right to enforce the land/water use restrictions set forth in Paragraph 26.b, including, but not limited to, the specific restrictions listed therein and any land/water use restrictions listed in the ICIAP. The Institutional Controls shall be granted to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) Settling Defendant and its representatives, and/or (iv) other appropriate grantees. The Institutional Controls, other than those granted to the United States, shall include a designation that EPA, and/or WDNR as appropriate, is a third party beneficiary, allowing EPA, and/or WDNR as appropriate, to maintain the right to enforce the Institutional Controls without acquiring an interest in real property. If any Institutional Controls are granted to Settling Defendant pursuant to this Paragraph 27.b(2), then Settling Defendant shall monitor, maintain, report on, and enforce such Institutional Controls. If such Institutional Controls are required by EPA, Settling Defendant shall:

      a.     provide notification to such persons of the pending imposition of Institutional Controls for those properties, and placement of the relevant information in the WDNR Database;

      b.     in Accordance with the schedule set forth in the ICIAP, Settling Defendant shall submit to EPA for review and approval regarding such property: (i) draft Institutional Controls that are enforceable under state or local law; (ii) the information required for the WDNR Database; and (iii) a current title insurance commitment, or other evidence of title acceptable to EPA, that shows title to the land affected by the Institutional Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances);

c.     within 15 days of EPA's approval and acceptance of the Institutional Controls and the title evidence, Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, Settling Defendant shall record a notice with the appropriate land records office that states the real property's relationship to the Site, that EPA has selected a remedy for the Site, that a Consent Decree has been entered for the Remedial Action, and that Institutional Controls for the property are set forth in the WDNR Database. The notice also shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court. Within 30 days after the notice is recorded with the land records office, Settling Defendant shall provide EPA and WDNR with a final title insurance policy, or other final evidence of title acceptable to EPA, as well as a certified copy of the original recorded deed notice showing the register's recording stamp. The Institutional Controls and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 3111.

d.     within 15 days of the approval and acceptance of the Remedial Action Work Plan and issuance of an approval letter to Settling Defendant incorporating Institutional Controls, WDNR shall place the Institutional Controls in the WDNR Database;

e.     should EPA and WDNR determine that the Institutional Controls require modification, Settling Defendant shall seek an agreement from the property owner to execute and record easements or covenants running with the land that (a) limit land, water, or resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office; And

f.     as part of certifying the Completion of Work under Paragraph 51.b, EPA and WDNR may update or impose new restrictions, limitations, or other conditions on the property, and WDNR shall place the required Institutional Controls in the WDNR Database.

28.     For purposes of Paragraphs 26.c(2), 27.a and 27.b, "best efforts" includes the payment of reasonable sums of money to obtain access, an agreement to restrict land/water use, and/or an agreement to release or subordinate a prior lien or encumbrance. If within 30 days of EPA' approval of the ICIAP, Settling Defendant has not: (a) obtained agreements to provide access or restrict land/water use, as required by Paragraph 27.a, 27.b(1), or 27.b(2); or (b) obtained, pursuant to Paragraph 26.c(2) or 27.b(2)(b), agreements from the holders of prior liens or encumbrances to release or subordinate such liens or encumbrances, Settling Defendant shall promptly notify the United States in writing, and shall include in that notification a

19

summary of the steps that Settling Defendant has taken to attempt to comply with Paragraph 26 or 27. The United States may, as it deems appropriate, assist Settling Defendant in obtaining access, agreements to restrict land/water use, or the release or subordination of a prior lien or encumbrance. Settling Defendant shall reimburse the United States under Section XVI (Payments for Response Costs) for all costs incurred, direct or indirect, by the United States in obtaining such access, agreements to restrict land/water use, Institutional Controls, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

29.     If EPA determines that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed at or in connection with the Site, Settling Defendant shall cooperate with EPA's and the State's efforts to secure and ensure compliance with such governmental controls.

30.     Notwithstanding any provision of the Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, Chapter 292 of the Wisconsin Statutes, and any other applicable statute or regulations.

## X.  REPORTING REQUIREMENTS

31.     In addition to any other requirement of this Consent Decree, Settling Defendant shall submit to EPA and the State two copies of written monthly progress reports that:  (a) describe the actions that have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendant or its contractors or agents in the previous month; (c) identify all plans, reports, and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, that are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendant have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Involvement Plan during the previous month and those to be undertaken in the next six weeks. Settling Defendant shall submit these progress reports to EPA and the State by the tenth day of every month following the lodging of this Consent Decree until EPA notifies Settling Defendant pursuant to Paragraph 51.b of Section XIV (Certification of Completion). If requested by EPA or the State, Settling Defendant shall also provide briefings for EPA and the State to discuss the progress of the Work.

32.     Settling Defendant shall notify EPA and WDNR of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

33.     Upon the occurrence of any event during performance of the Work that Settling Defendant is required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11004, or any applicable state law or regulation, Settling Defendant shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator) or, in the event that neither the EPA Project Coordinator nor Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 5, United States Environmental Protection Agency and WDNR. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304, or applicable state laws or regulations.

34.     Within 20 days after the onset of such an event, Settling Defendant shall furnish to EPA and the State a written report, signed by Settling Defendant's Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto. Within 30 days after the conclusion of such an event, Settling Defendant shall submit a report setting forth all actions taken in response thereto.

35.     Settling Defendant shall submit two copies of all plans, reports, data, and other deliverables required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA and WDNR in accordance with the schedules set forth in such plans. Settling Defendant shall simultaneously submit two copies of all such plans, reports, data, and other deliverables to the State. Upon request by EPA, Settling Defendant shall submit in electronic form all or any portion of any deliverables Settling Defendant is required to submit pursuant to the provisions of this Consent Decree.

36.     All deliverables submitted by Settling Defendant to EPA that purport to document Settling Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of Settling Defendant.

XI. EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

37.     Initial Submissions.

a.     After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (1) approve, in whole or in part, the submission; (2) approve the submission upon specified conditions; (3) disapprove, in whole or in part, the submission; or (4) any combination of the foregoing.

b.     EPA also may modify the initial submission to cure deficiencies in the submission if: (1) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work or (2) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

21

38.   <u>Resubmissions</u>.  Upon receipt of a notice of disapproval under Paragraph 37.a(3) or (4), or if required by a notice of approval upon specified conditions under Paragraph 37.a(2), Settling Defendant shall, within 45 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, EPA may: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Settling Defendant to correct the deficiencies; or (e) any combination of the foregoing.

39.   <u>Material Defects</u>.  If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 37.b(2) or 38 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 82.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Settling Defendant's submissions under this Section.

40.   <u>Implementation</u>.  Upon approval, approval upon conditions, or modification by EPA under Paragraph 37 (Initial Submissions) or Paragraph 38 (Resubmissions), of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated into and enforceable under this Consent Decree; and (b) Settling Defendant shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to its right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 37 or 38 shall not relieve Settling Defendant of any liability for stipulated penalties under Section XX (Stipulated Penalties).

## XII.  PROJECT COORDINATORS

41.   Within 20 days after lodging this Consent Decree, Settling Defendant, the State, and EPA will notify each other, in writing, of the name, address, telephone number, and email address of their respective designated Project Coordinators and Alternate Project Coordinators.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made.  Settling Defendant's Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  Settling Defendant's Project Coordinator shall not be an attorney for Settling Defendant in this matter.  He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

42.   Plaintiffs may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the NCP, 40

22

C.F.R. Part 300. EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

43.     EPA's Project Coordinator and Settling Defendant's Project Coordinator will meet, at a minimum, on a monthly basis.

## XIII. PERFORMANCE GUARANTEE

44.     In order to ensure the full and final completion of the Work, Settling Defendant shall establish and maintain a performance guarantee, initially in the amount of $2,571,000, for the benefit of EPA (hereinafter "Estimated Cost of the Work"). The performance guarantee, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms (provided that, if Settling Defendant intends to use multiple mechanisms, such multiple mechanisms shall be limited to surety bonds guaranteeing payment, letters of credit, trust funds, and insurance policies):

a.     A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.     One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (1) that has the authority to issue letters of credit and (2) whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.     A trust fund established for the benefit of EPA that is administered by a trustee (1) that has the authority to act as a trustee and (2) whose trust operations are regulated and examined by a federal or state agency;

d.     A policy of insurance that (1) provides EPA with acceptable rights as a beneficiary thereof; and (2) is issued by an insurance carrier (i) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (ii) whose insurance operations are regulated and examined by a federal or state agency;

e.     A demonstration by Settling Defendant that Settling Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are met to EPA's satisfaction; or

f.     A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (1) a direct or indirect parent company of Settling Defendant, or (2) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with Settling Defendant; provided, however, that any company providing such a

23

guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee) that it proposes to guarantee hereunder.

45.     Settling Defendant has selected, and EPA has found satisfactory, as an initial performance guarantee a demonstration that Settling Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) pursuant to Paragraph 44.e. Within ten days after the Effective Date, Settling Defendant shall execute or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding and such performance guarantee(s) shall thereupon be fully effective. Within 30 days after the Effective Date, Settling Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions), with a copy to the United States, EPA, and the State as specified in Section XXVI.

46.     If, at any time after the Effective Date and before issuance of the Certification of Completion of the Work pursuant to Paragraph 51, Settling Defendant provides a performance guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 44.e or 44.f, Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f) relating to these mechanisms unless otherwise provided in this Consent Decree, including but not limited to: (a) the initial submission of required financial reports and statements from the relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in the form prescribed by EPA in its financial test sample CFO letters and CPA reports available at: http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-test-samples.pdf; (b) the annual resubmission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (c) the prompt notification of EPA after each such entity determines that it no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1) and in any event within 90 days after the close of any fiscal year in which such entity no longer satisfies such financial test requirements. For purposes of the performance guarantee mechanisms specified in this Section XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to include the Work; the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work; the terms "owner" and "operator" shall be deemed to refer to Settling Defendant making a demonstration under Paragraph 44.e; and the terms "facility" and "hazardous waste facility" shall be deemed to include the Site.

47.     In the event that EPA determines at any time that a performance guarantee provided by Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that Settling Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section,

24

whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendant, within 30 days after receipt of notice of EPA's determination or, as the case may be, within 30 days after Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 44 that satisfies all requirements set forth in this Section XIII; provided, however, that if Settling Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that Settling Defendant shall have commenced to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for Settling Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 30 days. In seeking approval for a revised or alternative form of performance guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 49.b. Settling Defendant's inability to post a performance guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendant to complete the Work in strict accordance with the terms of this Consent Decree.

48. <u>Funding for Work Takeover</u>. The commencement of any Work Takeover pursuant to Paragraph 90 shall trigger EPA's right to receive the benefit of any performance guarantee(s) provided pursuant to Paragraphs 44.a, 44.b, 44.c, 44.d, or 44.f, and at such time EPA shall have immediate access to resources guaranteed under any such performance guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. Upon the commencement of any Work Takeover, if (a) for any reason EPA is unable to promptly secure the resources guaranteed under any such performance guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or (b) in the event that the performance guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 44.e or Paragraph 44.f(2), Settling Defendant (or in the case of Paragraph 44.f(2), the guarantor) shall immediately upon written demand from EPA deposit into a special account within the EPA Hazardous Substance Superfund or such other account as EPA may specify, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing the Work as of such date, as determined by EPA. In addition, if at any time EPA is notified by the issuer of a performance guarantee that such issuer intends to cancel the performance guarantee mechanism it has issued, then, unless Settling Defendant provides a substitute performance guarantee mechanism in accordance with this Section XIII no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing performance guarantee. All EPA Work Takeover costs not reimbursed under this Paragraph shall be reimbursed under Section XVI (Payments for Response Costs).

49. <u>Modification of Amount and/or Form of Performance Guarantee</u>.

a. <u>Reduction of Amount of Performance Guarantee</u>. If Settling Defendant believes that the estimated cost of completing the Work has diminished below the amount set forth in Paragraph 44, Settling Defendant may, on any anniversary of the Effective Date, or at

any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing the Work. Settling Defendant shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing the Work and the basis upon which such cost was calculated. In seeking approval for a reduction in the amount of the performance guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 49.b(2) for requesting a revised or alternative form of performance guarantee, except as specifically provided in this Paragraph 49.a. If EPA decides to accept Settling Defendant's proposal for a reduction in the amount of the performance guarantee, either to the amount set forth in Settling Defendant's written proposal or to some other amount as selected by EPA, EPA will notify the petitioning Settling Defendant of such decision in writing. Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of the Work shall be deemed to be the estimated cost of completing the Work set forth in EPA's written decision. After receiving EPA's written decision, Settling Defendant may reduce the amount of the performance guarantee in accordance with and to the extent permitted by such written acceptance and shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 49.b(2). In the event of a dispute, Settling Defendant may reduce the amount of the performance guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution). No change to the form or terms of any performance guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 47 or 49.b.

      b.    <u>Change of Form of Performance Guarantee</u>.

      (1)    If, after the Effective Date, Settling Defendant desires to change the form or terms of any performance guarantee(s) provided pursuant to this Section, Settling Defendant may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form or terms of the performance guarantee provided hereunder. The submission of such proposed revised or alternative performance guarantee shall be as provided in Paragraph 49.b(2). Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendant pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

      (2)    Settling Defendant shall submit a written proposal for a revised or alternative performance guarantee to EPA that shall specify, at a minimum, the estimated cost of completing the Work, the basis upon which such cost was calculated, and the proposed revised performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding. The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Defendant shall submit such proposed revised or alternative performance guarantee to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions). EPA will notify Settling Defendant in writing of its decision to accept or

26

reject a revised or alternative performance guarantee submitted pursuant to this Paragraph. Within ten days after receiving a written decision approving the proposed revised or alternative performance guarantee, Settling Defendant shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective. Settling Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer within 30 days after receiving a written decision approving the proposed revised or alternative performance guarantee in accordance with Section XXVI (Notices and Submissions) and to the United States, EPA, and the State as specified in Section XXVI.

      c.    <u>Release of Performance Guarantee</u>. Settling Defendant shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph. If Settling Defendant receives written notice from EPA in accordance with Paragraph 51 that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendant in writing, Settling Defendant may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section. In the event of a dispute, Settling Defendant may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

XIV. CERTIFICATION OF COMPLETION

50.    <u>Completion of the Remedial Action</u>.

      a.    Within 90 days after Settling Defendant concludes that the Remedial Action has been fully performed and the Performance Standards have been achieved, Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling Defendant, EPA, and the State. If, after the pre-certification inspection, Settling Defendant still believes that the Remedial Action has been fully performed and the Performance Standards have been achieved, it shall submit a written report requesting certification to EPA for approval, with a copy to the State, pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables) within 30 days after the inspection. In the report, a registered professional engineer and Settling Defendant's Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of the Settling Defendant or Settling Defendant's Project Coordinator:

    I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system,

27

or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 14.a. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendant. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants by Plaintiffs). Certification of Completion of the Remedial Action shall not affect Settling Defendant's remaining obligations under this Consent Decree.

51.     Completion of the Work.

a.     Within 90 days after Settling Defendant concludes that all phases of the Work, other than any remaining activities required under Section VII (Remedy Review), have been fully performed, Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling Defendant, EPA, and the State. If, after the pre-certification inspection, Settling Defendant still believes that the Work has been fully performed, Settling Defendant shall submit to EPA and WDNR a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the statement set forth in Paragraph 50.a, signed by a responsible corporate official of the Settling Defendant or Settling Defendant's Project Coordinator. If, after review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendant to

28

perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 14.a. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

  b.   If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Settling Defendant and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify Settling Defendant in writing.

## XV. EMERGENCY RESPONSE

52.   If any action or occurrence during the performance of the Work that causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendant shall, subject to Paragraph 53, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator and WDNR's Project Manager. If neither of these persons is available, Settling Defendant shall notify the EPA Emergency Response Unit, Region 5. Settling Defendant shall also immediately notify the WDNR 24 Hour Emergency Spill Hotline at 1-800-943-0003, the WDNR Project Manager, and the WDNR West Central Region Spill Coordinator. Settling Defendant shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendant fails to take appropriate response action as required by this Section, and EPA or, as appropriate, the State takes such action instead, Settling Defendant shall reimburse EPA and the State all costs of the response action under Section XVI (Payments for Response Costs) or under applicable state law.

53.   Subject to Section XXI (Covenants by Plaintiffs), nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, or the State, (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site

29

## XVI. PAYMENTS FOR RESPONSE COSTS

54.     Payment by Settling Defendant for Past Response Costs.

     a.     Within 30 days after the Effective Date, Settling Defendant shall pay to EPA $37,469.81 in payment for Past Response Costs. Payment shall be made in accordance with Paragraph 56.a (Instructions for Past Response Cost Payments).

     b.     The total amount to be paid by Settling Defendant pursuant to Paragraph 54.a shall be deposited by EPA in the WPSC Stevens Point MGP Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

55.     Payments by Settling Defendant for Future Response Costs.

     a.     Payments by Settling Defendant to EPA. Settling Defendant shall pay to EPA all Future Response Costs not inconsistent with the NCP.

     (1)     On a periodic basis, EPA will send Settling Defendant a bill requiring payment that includes an Itemized Cost Summary, which includes direct and indirect costs incurred by EPA, its contractors, and DOJ. Settling Defendant shall make all payments within 30 days after Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 57, in accordance with Paragraph 56.b (Instructions for Future Response Cost Payments).

     (2)     The total amount paid by Settling Defendant pursuant to Paragraph 55a shall be deposited in the WPSC Stevens Point MGP Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

     b.     Payments by Settling Defendant to State. Settling Defendant shall pay to the State all State Future Response Costs not inconsistent with the NCP. The State will send Settling Defendant a bill requiring payment that includes a State-prepared cost summary on a periodic basis. Settling Defendant shall make all payments within 30 days after Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 57. Settling Defendant shall make all payments to the State required by this Paragraph in accordance with Paragraph 56.d.

56.     Payment Instructions for Settling Defendant.

     a.     Instructions for Past Response Costs Payments. All payments required, elsewhere in this Consent Decree, to be made in accordance with this Paragraph 56.a shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Western District of Wisconsin after the Effective Date.

30

The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made in accordance with this Consent Decree. The FLU shall provide the payment instructions to:

> Naren M. Prasad
> Settling Defendant's Project Coordinator
> Integrys Business Support, LLC
> 130 East Randolph Street, 22nd Floor
> Chicago, Illinois 60601
> (312) 240-4569
> NMPrasad@integrysgroup.com

on behalf of Settling Defendant. Settling Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change in accordance with Section XXVI (Notices and Submissions). When making payments under this Paragraph 56.a, Settling Defendant shall also comply with Paragraph 56.c.

           b.    Instructions for Future Response Costs Payments and Stipulated Penalties. All payments required, elsewhere in this Consent Decree, to be made in accordance with this Paragraph 56.b shall be made by Fedwire EFT to:

> Federal Reserve Bank of New York
> ABA = 021030004
> Account = 68010727
> SWIFT address = FRNYUS33
> 33 Liberty Street
> New York NY 10045
> Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection Agency"

When making payments under this Paragraph 56.b, Settling Defendant shall also comply with Paragraph 56.c.

           c.    Instructions for All Payments to the United States. All payments made under Paragraphs 56.a (Instructions for Past Response Cost Payments) or 56.b (Instructions for Future Response Cost Payments) shall reference the CDCS Number, Site/Spill ID Number B5CJ, and DOJ Case Number 90-11-3-10755. At the time of any payment required to be made in accordance with Paragraphs 56.a or 56.b, Settling Defendant shall send notice that payment has been made to the United States, and to EPA, in accordance with Section XXVI (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268. Such notice shall also reference the CDCS Number, Site/Spill ID Number, and DOJ Case Number.

           d.    Instructions for State Future Response Costs Payments and Stipulated Penalties. All payments required, elsewhere in this Consent Decree, to be made in accordance

31

with this Paragraph 56.d shall be made by official bank check made payable to Wisconsin Department of Natural Resources. Payment shall reference the Site and indicate that the payment is being made pursuant to this Consent Decree. Settling Defendant shall send the bank check to:

> Wisconsin Department of Natural Resources
> Attn: Remediation & Redevelopment Program
> 101 S. Webster Street
> Madison, WI 53703

57.     Settling Defendant may contest any Future Response Costs billed under Paragraph 55 (Payments by Settling Defendant for Future Response Costs) if it determines that EPA or the State has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if it believes EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Such objection shall be made in writing within 30 days after receipt of the bill and must be sent to the United States (if the United States' accounting is being disputed) or the State (if the State's accounting is being disputed) pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, Settling Defendant shall pay all uncontested Future Response Costs to the United States or the State within 30 days after Settling Defendant's receipt of the bill requiring payment. Simultaneously, Settling Defendant shall establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"), and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. Settling Defendant shall send to the United States and the State, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account.

Simultaneously with establishment of the escrow account, Settling Defendant shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States or the State prevails in the dispute, Settling Defendant shall pay the sums due (with accrued interest) to the United States or the State, if State costs are disputed, within five days after the resolution of the dispute. If Settling Defendant prevails concerning any aspect of the contested costs, Settling Defendant shall pay that portion of the costs (plus associated accrued interest) for which it did not prevail to the United States or the State, if State costs are disputed, within five days after the resolution of the dispute. Settling Defendant shall be disbursed any balance of the escrow account. All payments to the United States under this Paragraph shall be made in accordance with Paragraphs 56.b (Instructions for Future Response Cost Payments). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendant's obligation to reimburse the United States and the State or their Future Response Costs.

58.     Interest. In the event that any payment for Past Response Costs, Future Response Costs, or State Future Response Costs required under this Section is not made by the date

required, Settling Defendant shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the Effective Date. The Interest on Future Response Costs or State Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 74.

## XVII. INDEMNIFICATION AND INSURANCE

59.   Settling Defendant's Indemnification of the United States and the State.

a.   The United States and the State do not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Defendant as EPA's authorized representative under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Settling Defendant shall indemnify, save and hold harmless the United States, the State, and their officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's authorized representative under Section 104(e) of CERCLA. Further, Settling Defendant agrees to pay the United States and the State all costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States and the State based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree. Neither Settling Defendant nor any such contractor shall be considered an agent of the United States or the State.

b.   The United States and the State shall give Settling Defendant notice of any claim for which the United States or the State plans to seek indemnification pursuant to this Paragraph 59 and shall consult with Settling Defendant prior to settling such claim.

60.   Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States or the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendant shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between

33

Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

61.     No later than 15 days before commencing any on-site Work, Settling Defendant shall secure, and shall maintain until the first anniversary after issuance of EPA's Certification of Completion of the Remedial Action pursuant to Paragraph 50.b of Section XIV (Certification of Completion), commercial general liability insurance with limits of two million dollars, for any one occurrence, and automobile liability insurance with limits of two million dollars, combined single limit, naming the United States and the State as additional insureds with respect to all liability arising out of the activities performed by or on behalf of Settling Defendant pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendant shall provide to EPA and the State certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendant demonstrates by evidence satisfactory to EPA and the State that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

62.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the obligation. The requirement that Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

63.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Settling Defendant intends or may intend to assert a claim of force majeure, Settling Defendant shall notify EPA's Project Coordinator orally or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 5, and WDNR's Project Manager within 24 hours of when Settling Defendant first knew that the event might cause a delay. Within five days thereafter, Settling Defendant shall provide in writing to EPA and WDNR an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendant's rationale for attributing such delay to a force

34

majeure; and a statement as to whether, in the opinion of Settling Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment. Settling Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 62 and whether Settling Defendant has exercised its best efforts under Paragraph 62, EPA may, in its unreviewable discretion, excuse in writing Settling Defendant's failure to submit timely notices under this Paragraph.

64.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Settling Defendant in writing of its decision. If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay is attributable to a force majeure, EPA will notify Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

65.     If Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 62 and 63. If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX. DISPUTE RESOLUTION

66.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States or the State to enforce obligations of Settling Defendant that have not been disputed in accordance with this Section.

67.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations

shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

68.     Statements of Position.

a.     In the event that the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA, following consultation with the State, shall be considered binding unless, within 10 days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States and the State a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Defendant. The Statement of Position shall specify Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 69 (Record Review) or Paragraph 70.

b.     Within 30 days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, following consultation with the State, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 69 (Record Review) or Paragraph 70. Within 15 days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.

c.     If there is disagreement between EPA and Settling Defendant as to whether dispute resolution should proceed under Paragraph 69 (Record Review) or Paragraph 70, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA, following consultation with the State, to be applicable. However, if Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 69 and 70.

69.     Record Review. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendant regarding the validity of the ROD's provisions.

a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.    The Director of the Superfund Division, EPA Region 5, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 69.a. This decision shall be binding upon Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraphs 69.c and 69.d.

c.    Any administrative decision made by EPA pursuant to Paragraph 69.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendant with the Court and served on all Parties within ten days after receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendant's motion.

d.    In proceedings on any dispute governed by this Paragraph 69, Settling Defendant shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 69.a.

70.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph.

a.    Following receipt of Settling Defendant's Statement of Position submitted pursuant to Paragraph 68, the Director of the Superfund Division, EPA Region 5, will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on Settling Defendant unless, within ten days after receipt of the decision, Settling Defendant files with the Court and serves on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendant's motion.

b.    Notwithstanding Paragraph L (CERCLA Section 113(j) Record Review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph 70 shall be governed by applicable principles of law.

71.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 79. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX.  STIPULATED PENALTIES

72.     Settling Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 73 and 74 to the United States and the State on an equal percentage basis for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure).  "Compliance" by Settling Defendant shall include completion of all payments and activities required under this Consent Decree, or any plan, report, or other deliverable approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans, reports, or other deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

73.     Stipulated Penalty Amounts - Work (Including Payments and Excluding Plans, Reports, and Other Deliverables).

        a.      The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 73.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500.00 | 1st through 14th day |
| $1,000.00 | 15th through 30th day |
| $5,000.00 | 31st day and beyond |

        b.      Compliance Milestones.

        (1)     Failure to implement activities required by the Remedial Design Work Plan;

        (2)     Failure to implement activities required by the Remedial Action Work Plan; and

        (3)     Failure to meet any compliance date set forth in the RD or RA SOW.

74.     Stipulated Penalty Amounts - Plans, Reports, and other Deliverables.  The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other plans or deliverables pursuant to the Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $300.00 | 1st through 14th day |
| $600.00 | 15th through 30th day |
| $2,000.00 | 31st day and beyond |

75.     In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 90 (Work Takeover), Settling Defendant shall be liable for a stipulated penalty in the amount of $100,000.  Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraphs 48 (Funding for Work Takeover) and 90 (Work Takeover).

38

76.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under Section XI (EPA Approval of Plans, Reports, and Other Deliverables), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency; (b) with respect to a decision by the Director of the Superfund Division, EPA Region 5, under Paragraph 69.b or 70.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendant's reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

77.     Following EPA's determination that Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendant written notification of the same and describe the noncompliance. EPA and the State may send Settling Defendant a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendant of a violation.

78.     All penalties accruing under this Section shall be due and payable to the United States and the State within 30 days after Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XIX (Dispute Resolution) within the 30-day period. All payments under this Section shall indicate that the payment is for stipulated penalties. Payments to the United States and the State shall be made in accordance with Paragraph 56.b (Instructions for Future Response Cost Payments and Stipulated Penalties) and Paragraph 56.d (Instructions for State Future Response Cost Payments and Stipulated Penalties), respectively.

79.     Penalties shall continue to accrue as provided in Paragraph 76 during any dispute resolution period, but need not be paid until the following:

          a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA and the State within 15 days after the agreement or the receipt of EPA's decision or order;

          b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA and the State within 60 days after receipt of the Court's decision or order, except as provided in Paragraph 79.c;

          c.     If the District Court's decision is appealed by any Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owed to the United States and the State into an interest-bearing escrow account, established at a duly

chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA and the State or to Settling Defendant to the extent that it prevails.

80.     If Settling Defendant fails to pay stipulated penalties when due, Settling Defendant shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendant has timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 79 until the date of payment and (b) if Settling Defendant fails to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 78 until the date of payment. If Settling Defendant fails to pay stipulated penalties and Interest when due, the United States and the State may institute proceedings to collect the penalties and Interest.

81.     The payment of penalties and Interest, if any, shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

82.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622(l), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

83.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

XXI. COVENANTS BY PLAINTIFFS

84.     <u>Covenants for Settling Defendant by United States</u>. In consideration of the actions that will be performed and the payments that will be made by Settling Defendant under this Consent Decree, and except as specifically provided in Paragraphs 86 and 87 (Pre- and Post-Certification Reservations), and 89 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA relating to the Site. Except with respect to future liability, these covenants shall take effect upon the receipt by EPA of the payment required by Paragraph 54.a (Payments for Past Response Costs) and any Interest or stipulated penalties due thereon under Paragraph 58 (Interest) or Section XX (Stipulated Penalties). With respect to future liability, these covenants shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 50.b of Section XIV (Certification of Completion). These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this

40

Consent Decree. These covenants extend only to Settling Defendant and do not extend to any other person.

85.     Covenants for Settling Defendant by State. In consideration of the actions that will be performed and the payments that will be made by Settling Defendant under this Consent Decree, and except as specifically provided in Paragraphs 86, 87 (Pre- and Post-Certification Reservations), and 89 (General Reservations of Rights), the State covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA or Wisconsin statutory or common law relating to the Site. Except with respect to future liability, these covenants shall take effect upon the receipt by the State of the payment required by Paragraph 54.b (Payments for Past Response Costs) and any Interest or stipulated penalties due thereon under Paragraph 58 (Interest) or Section XX (Stipulated Penalties). With respect to future liability, these covenants shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 50.b of Section XIV (Certification of Completion). These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree. These covenants extend only to Settling Defendant and do not extend to any other person.

86.     Pre-Certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States and the State reserve, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendant to perform further response actions relating to the Site and/or to pay the United States and the State for additional costs of response if (a) prior to Certification of Completion of the Remedial Action, (1) conditions at the Site, previously unknown to EPA, are discovered or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

87.     Post-Certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States and the State reserve, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendant to perform further response actions relating to the Site and/or to pay the United States and the State for additional costs of response if, (a) subsequent to Certification of Completion of the Remedial Action, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

88.     For purposes of Paragraph 86 (Pre-Certification Reservations), the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the ROD for the Site and the administrative record supporting the ROD. For purposes of Paragraph 87 (Post-Certification Reservations), the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the ROD, the administrative record supporting the ROD, the

41

post-ROD administrative record, or in any information received by EPA pursuant to the requirements of the AOC or this Consent Decree prior to Certification of Completion of the Remedial Action.

89.     General Reservations of Rights. The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Plaintiffs' covenants. Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all rights against Settling Defendant with respect to:

a.      liability for failure by Settling Defendant to meet a requirement of this Consent Decree;

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.      liability based on the ownership of the Site by Settling Defendant when such ownership commences after signature of this Consent Decree by Settling Defendant;

d.      liability based on the operation of the Site by Settling Defendant when such operation commences after signature of this Consent Decree by Settling Defendant and does not arise solely from Settling Defendant's performance of the Work;

e.      liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendant;

f.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g.      criminal liability;

h.      liability for violations of federal or state law that occur during or after implementation of the Work; and

i.      liability prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 14 (Modification of SOW or Related Work Plans).

90.     Work Takeover.

a.      In the event EPA, following consultation with WDNR, determines that Settling Defendant (1) has ceased implementation of any portion of the Work, or (2) is seriously or repeatedly deficient or late in its performance of the Work, or (3) is implementing the Work in

42

a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendant. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendant a period of ten days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

    b. If, after expiration of the ten-day notice period specified in Paragraph 90.a, Settling Defendant has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA and/or WDNR may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover"). EPA will notify Settling Defendant in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 90.b. Funding of Work Takeover costs is addressed under Paragraph 48.

    c. Settling Defendant may invoke the procedures set forth in Paragraph 69 (Record Review), to dispute EPA's implementation of a Work Takeover under Paragraph 90.b. However, notwithstanding Settling Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 90.b until the earlier of (1) the date that Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Paragraph 69 (Record Review) requiring EPA to terminate such Work Takeover.

  91. Notwithstanding any other provision of this Consent Decree, the United States and the State retain all authority and reserve all rights to take any and all response actions authorized by law.

    XXII. COVENANTS BY SETTLING DEFENDANT

  92. <u>Covenants by Settling Defendant</u>. Subject to the reservations in Paragraph 94, Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States or the State with respect to the Site and this Consent Decree, including, but not limited to:

    a. any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112 or 113, or any other provision of federal or state law;

    b. any claims under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Site, Past Response Costs, Future Response Costs, State Future Response Costs, and this Consent Decree; or

    c. any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. §1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the State Constitution, or at common law.

93.     Except as provided in Paragraph 96 (Claims Against De Micromis Parties) and Paragraph 103 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States or the State bring a cause of action or issue an order pursuant to any of the reservations in Section XXI (Covenants by Plaintiffs), other than in Paragraphs 89.a (claims for failure to meet a requirement of the Consent Decree), 89.g (criminal liability), and 89.h (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States or the State is seeking pursuant to the applicable reservation.

94.     Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendant's plans, reports, other deliverables or activities.

95.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

96.     Claims Against De Micromis Parties.  Settling Defendant agrees not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that it may have for all matters relating to the Site against any person where the person's liability to Settling Defendant with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials.

97.     The waiver in Paragraph 96 (Claims Against De Micromis Parties) shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person meeting the criteria in Paragraph 96 if such person asserts a claim or cause of action relating to the Site against Settling Defendant.  This waiver also shall not apply to any claim or cause of action against any person meeting the criteria in Paragraph 96 if EPA determines:

        a.      that such person has failed to comply with any EPA requests for information or administrative subpoenas issued pursuant to Section 104(e) or Section 122(e) of CERCLA, 42 U.S.C. § 9604(e) or § 9622(e), or Section 3007 of RCRA, 42 U.S.C. § 6927, or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site, or has been convicted of a criminal violation

44

for the conduct to which this waiver would apply and that conviction has not been vitiated on appeal or otherwise; or

        b.     that the materials containing hazardous substances contributed to the Site by such person have contributed significantly, or could contribute significantly, either individually or in the aggregate, to the cost of response action or natural resource restoration at the Site.

98.     Settling Defendant agrees not to seek judicial review of the final rule listing the Site on the NPL based on a claim that changed site conditions that resulted from the performance of the Work in any way affected the basis for listing the Site.

## XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION

99.     Except as provided in Paragraph 96 (Claims Against De Micromis Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Paragraph 96 (Claims Against De Micromis Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

100.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person, except for the State, provided, however, that if the United States exercises rights under the reservations in Section XXI (Covenants by Plaintiffs), other than in Paragraphs 89.a (claims for failure to meet a requirement of the Consent Decree), 89.g (criminal liability), or 89.h (violations of federal/state law during or after implementation of the Work), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions.

101.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

102.     Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States and the State within ten days after service of the complaint on Settling Defendant. In addition, Settling Defendant shall

notify the United States and the State within ten days after service or receipt of any Motion for Summary Judgment and within ten days after receipt of any order from a court setting a case for trial.

103.   Res Judicata and Other Defenses.  In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants by Plaintiffs).

## XIV.  ACCESS TO INFORMATION

104.   Settling Defendant shall provide to EPA and the State, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within its possession or control or that of its contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work.  Settling Defendant shall also make available to EPA and the State, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

105.   Business Confidential and Privileged Documents.

a.   Settling Defendant may assert business confidentiality claims covering part or all of the Records submitted to Plaintiffs under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies Records when they are submitted to EPA and the State, or if EPA has notified Settling Defendant that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendant.

b.   Settling Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendant asserts such a privilege in lieu of providing Records, it shall provide Plaintiffs with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendant.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only.  Settling Defendant shall retain all Records that it claims to be privileged until the United

46

States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendant's favor.

        c.     No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld from the United States or the State on the grounds that they are privileged or confidential.

106.    No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV.  RETENTION OF RECORDS

107.    Until ten years after Settling Defendant's receipt of EPA's notification pursuant to Paragraph 51.b (Completion of the Work), Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site or the liability of any other person under CERCLA with respect to the Site. Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above, all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Work, provided, however, that Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

108.    At the conclusion of this record retention period, Settling Defendant shall notify the United States and the State at least 90 days prior to the destruction of any such Records, and, upon request by the United States or the State, Settling Defendant shall deliver any such Records to EPA or WDNR. Settling Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege, it shall provide Plaintiffs with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted by Settling Defendant. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only. Settling Defendant shall retain all Records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendant's favor. However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

109.    Settling Defendant certifies that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the

earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA and State requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XXVI. NOTICES AND SUBMISSIONS

110.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, and Settling Defendant, respectively.  Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree should not be sent to the U.S. Department of Justice.

As to the United States:          Chief, Environmental Enforcement Section
                                  Environment and Natural Resources Division
                                  U.S. Department of Justice
                                  P.O. Box 7611
                                  Washington, DC  20044-7611
                                  Re: DJ # 90-11-3-10755

As to EPA:                        Director, Superfund Division
                                  United States Environmental Protection Agency
                                  Region 5
                                  77 West Jackson Boulevard
                                  Mail Code: S-6J
                                  Chicago, IL  60604

and:

                                  Leslie Patterson
                                  EPA Project Coordinator
                                  United States Environmental Protection Agency
                                  Region 5
                                  77 West Jackson Boulevard
                                  Mail Code: SR-6J
                                  Chicago, IL  60604-3507

As to the State:                  Tom Hvizdak
                                  State Project Coordinator
                                  Wisconsin Department of Natural Resources
                                  473 Griffith Avenue
                                  Wisconsin Rapids, WI  54494

48

and:

Lacey Cochart
Bureau of Legal Services
Wisconsin Department of Natural Resources
101 South Webster Street
Madison, WI 53703

As to Settling Defendant:

Naren M. Prasad
Settling Defendant's Project Coordinator
Integrys Business Support, LLC
130 East Randolph Street, 22nd Floor
Chicago, IL 60601

## XXVII. RETENTION OF JURISDICTION

111.    This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendant for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution).

## XXIII. APPENDICES

112.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the AOC.

"Appendix B" is the ROD.

"Appendix C" is the description and/or map of the Site.

"Appendix D" is the SOW.

## XXIX. COMMUNITY INVOLVEMENT

113.    If requested by EPA or the State, Settling Defendant shall participate in community involvement activities pursuant to the community involvement plan to be developed by EPA. EPA will determine the appropriate role for Settling Defendant under the Plan. Settling Defendant shall also cooperate with EPA and the State in providing information regarding the Work to the public. As requested by EPA or the State, Settling Defendant shall participate in the preparation of such information for dissemination to the public and in public meetings that may be held or sponsored by EPA or the State to explain activities at or relating to the Site. Within 30 days after a request by EPA, Settling Defendant also shall provide EPA with a Technical

49

Assistance Plan ("TAP") for arranging (at Settling Defendant's own expense, up to $50,000) for a qualified community group: (a) to receive services from (an) independent technical advisor(s) who can help group members understand Site cleanup issues; and (b) to share this information with others in the community during the Work conducted pursuant to this Consent Decree. The TAP shall state that Settling Defendant will provide and arrange for any additional assistance needed if the selected community group demonstrates such a need as provided in the SOW. Upon its approval by EPA, the TAP shall be incorporated into and enforceable under this Consent Decree.

Costs incurred by the United States under this Section, including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e), shall be considered Future Response Costs that Settling Defendant shall pay pursuant to Section XVI (Payments for Response Costs).

## XXX. MODIFICATION

114.    Except as provided in Paragraph 14 (Modification of SOW or Related Work Plans), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and Settling Defendant, and shall be effective upon approval by the Court. Except as provided in Paragraph 14, non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendant. All modifications to the Consent Decree, other than the SOW, also shall be signed by the State, or a duly authorized representative of the State, as appropriate. A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii). Before providing its approval to any modification to the SOW, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.

115.    Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

## XXXI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

116.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

117.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXII. SIGNATORIES/SERVICE

118.    Each undersigned representative of Settling Defendant, the United States, and the State to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

119.    Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

120.    Settling Defendant shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree. Settling Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXXIII. FINAL JUDGMENT

121.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

121.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and Settling Defendant. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 30th DAY OF October, 2014.


United States District Judge

51

Signature Page for Consent Decree regarding the WPSC Stevens Point MGP Superfund Alternative Site

**FOR THE UNITED STATES OF AMERICA**

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division

08-04-2014
Date

THOMAS A. MARIANI
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U. S. Department of Justice

8·6·2014
Date

JEFFREY A. SPECTOR
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611


JOHN W. VAUDREUIL
United States Attorney

LESLIE K. HERJE
Assistant United States Attorney
Chief, Civil Division
Western District of Wisconsin
222 West Washington Ave.
Suite 700
Madison, WI  53703

Signature Page for Consent Decree regarding the WPSC Stevens Point MGP Superfund Alternative Site

**FOR THE UNITED STATES OF AMERICA**

8-5-14
Date

RICHARD KARL
Director
Superfund Division, Region 5
U.S. Environmental Protection Agency

Signature Page for Consent Decree regarding the WPSC Stevens Point MGP Superfund Alternative Site

**FOR THE STATE OF WISCONSIN**

Date: _August 6, 2014_

CATHY STEPP
Secretary
Wisconsin Department of Natural Resources
101 South Webster Street
Madison, WI 53703

Date: _August 6, 2014_

CYNTHIA R. HIRSCH
Assistant Attorney General
Wisconsin Department of Justice
123 W. Washington Avenue
Madison, WI 53702

Signature Page for Consent Decree regarding the WPSC Stevens Point MGP Superfund
Alternative Site

**FOR THE DEFENDANT WISCONSIN PUBLIC SERVICE CORPORATION:**

7/24/14
Date

*[signature]*
Signature

Typed Name: Connie Lawniczak

Title: Assistant Vice President of Shared Services
and Environmental Services

Address: 700 North Adams Street
Green Bay, WI 54301

Agent Authorized to Accept Service on Behalf of Above-Signed Party:

Typed Name: CT Corporation System

Address:        8040 Excelsior Drive
                Suite 200
                Madison, WI 53717